IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KODY HASTINGS, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | No. 3:11-CV-2528-N-BH |
| | ) | |
| W.C. BORNE, et al., | ) | |
|     Defendants. | ) | Referred for Pretrial Management |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to Special Order 3-251, this *pro se* prisoner civil rights case has been automatically referred for pretrial management. Before the Court is *Garland Officers' Qualified Immunity Motion for Summary Judgment*, filed March 5, 2012 (doc. 29). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I. BACKGROUND

On September 27, 2011, Kody Hastings (Plaintiff) filed this action under 42 U.S.C. § 1983 against Garland police officer William C. Borne (Borne or Arresting Officer), and Garland detention officers Varis E. Green (Green), C. Stroud (Stroud), Lauren Whiteside (Whiteside), and Joseph A. Aguilar (Aguilar) (collectively Detention Officers) for alleged excessive force. (Compl. at 3-4, 8-12 (doc. 2); Magistrate Judge's Questionnaire ("MJQ") Ans. 1-5 (doc. 8).[1]).

It is undisputed that in the early morning hours of March 28, 2011, Plaintiff was arrested for failure to identify and violating the city park's curfew. (Compl. at 4, 8-10 (doc. 2); MJQ Ans. 1 (doc. 8); Response Appendix ("Resp. Appx."), Ex. 1 (doc. 33);[2] Motion for Summary Judgment

---

[1] Plaintiff's answers to the questionnaire constitute an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[2] Plaintiff s evidence includes a DVD, an unsworn statement and medical records submitted in response to the defendants' summary judgment motion as well as his sworn complaint and questionnaire answers. His sworn complaint and answers may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994).

Appendix ("MSJ Appx."), Ex. 1 (doc. 31).) The Arresting Officer transported Plaintiff to the Garland Detention Center. *Id.* The Arresting Officer avers that he left after the initial intake was completed and had no further interaction with Plaintiff. (MSJ Appx., Ex. 1 (doc. 31).) According to a DVD containing video and audio recordings of much of the events at the detention center submitted by both sides, the Arresting Officer waited while the intake procedure was completed but was not involved in any of the later interactions between the Detention Officers and Plaintiff. (MSJ Appx., Ex. 5 (doc. 31); Correspondence (doc. 27).)[3] The DVD also shows that Plaintiff was frequently verbally aggressive to the officers, beginning with his interaction with the Arresting Officer during the intake process. *Id.* The defendants aver that Plaintiff vacillated between being verbally combative and cooperative with the Arresting Officer and the Detention Officers during his entire time at the detention center. (MSJ Appx., Ex. 1-4 (doc. 31).) Plaintiff concedes that "bantering" between the parties escalated. (Compl. at 9-10 (doc. 2); Resp. Appx., Ex. 1 (doc. 33).)

It is undisputed that after the initial intake procedure was completed, Green and Stroud escorted Plaintiff to a changing area, where he changed into jail attire. (Compl. at 9-11 (doc. 2); Resp. Appx., Ex. 1 (doc. 33); MSJ Appx., Ex. 2-4 (doc. 31).) Plaintiff was then escorted to another area of the jail, where he was asked various medical questions by Whiteside. *Id.* Whiteside asked whether Plaintiff had had suicidal thoughts, and because of his response to this question, he was accompanied back to a changing area to change into the attire worn by inmates considered to be at risk for suicide. *Id.* The DVD shows Plaintiff continued to be verbally aggressive through the two different times that he changed clothing, and the officers sometimes responded to Plaintiff's

---

[3] Some video segments contain both audio and visual components while others have separate segments for the audio and visual recordings. According to the defendants' evidence, the video cameras are activated by motion sensors, so at times the closest camera captures the audio but not the visual recording, and another camera captures the visual recording but not the audio. (*See* MSJ Appx., Ex. 6 (doc. 31).)

2

comments and sometimes ignored them. (MSJ Appx. (doc. 31), Ex. 5.)

The parties agree that after Plaintiff changed into the suicide risk clothing, Green and Stroud escorted him to another part of the jail. (Compl. at 10-11 (doc. 2); Resp. Appx., Ex. 1 (doc. 33); MSJ Appx., Ex. 2-4 (doc. 31).) According to Plaintiff, he made a racial remark during this trip and was then taken down to the ground by all the defendants. (Compl. at 10-11 (doc. 2); Resp. Appx., Ex. 1 (doc. 33).) The Detention Officers aver that Green and Stroud were escorting Plaintiff and holding his arms. (MSJ Appx., Ex. 2-4 (doc. 31).) After he stopped walking and turned towards Green, Green took him down to the ground using a straight armbar takedown. *Id.* The DVD shows that Plaintiff was being escorted by two detention officers who were holding on to his arms, and that he was taken down to the ground after he stopped walking between two officers and appeared to turn towards one of them. (MSJ Appx., Ex. 5 (doc. 31).)

According to the Detention Officers, Plaintiff bit Green on the hand after he was taken to the ground. (MSJ Appx., Ex. 2-4 (doc. 31).) They aver used that they used only the force necessary to shackle Plaintiff while he struggled on the ground by applying pressure to his upper back with a knee to stop him from moving his head, sitting on his legs and striking a nerve in his leg two times to stop him from moving his leg, and striking another nerve four times to get him to stop trying to hit the officers and allow him to be handcuffed. *Id.* Plaintiff avers that although he was not resisting at any time, all of the defendants began punching and kicking him in the face and upper body while he was on the ground, and that he lost consciousness for a few seconds.[4] (Compl. at 3-4, 10-12 (doc. 2); MJQ Ans. 1-5 (doc. 8); Resp. Appx., Ex. 1 (doc. 33).) The DVD shows that the Detention Officers did not kick and punch Plaintiff while he was lying on the floor. (MSJ Appx. (doc. 31), Ex.

---

[4] The medical records tendered by Plaintiff state that he "was in 'fight with police' last night." (Resp. Appx. (doc. 33) at 20.)

5.) They restrained him until handcuffs and leg shackles could be placed on him while he resisted. Green and other officers cuffed Plaintiff's hands and shackled his ankles, and took him to a room with a restraint chair. *Id.*

According to Plaintiff, after his hands and ankles were cuffed tightly and with extreme violence, he was dragged to another room where his semi-conscious body was thrown into the restraint chair. (Compl. at 3-4, 11-12 (doc. 2); MJQ Ans. 1-5 (doc. 8); Resp. Appx., Ex. 1 (doc. 33).) After he was in the chair, Aguilar choked him with a towel while the other officers restrained his arms and legs tightly in the chair. *Id.* According to the Detention Officers, because of his talk of suicide, his erratic behavior, and his attack on Green, they walked a handcuffed and shackled Plaintiff to a room containing a restraint chair. (MSJ Appx. (doc. 31), Ex. 2-4.) They restrained Plaintiff's hands and ankles in the chair while Aguilar covered Plaintiff's mouth with a towel so that he could not bite any of the officers. *Id.* Plaintiff's breathing was never restricted, and he continued to scream during the entire time he was restrained in the chair. *Id.* The DVD shows that after he was handcuffed and shackled, Plaintiff was conscious and walked of his own volition to another room where he was placed, not thrown, in the restraint chair. (MSJ Appx., Ex. 5.) Plaintiff was not choked while he was being secured in a restraint chair. *Id.* A towel was placed over his mouth and then removed and then replaced, and he continued to speak or scream throughout the time he was in the chair. *Id.* The DVD concludes when the officers left Plaintiff restrained in the chair by his arms and legs, with his face and mouth free, at 1:33 A.M. *Id.*

The parties agree that Plaintiff was strapped to this chair for a period of time. (Compl. at 12-13 (doc. 2); Resp. Appx., Ex. 1 (doc. 33); MSJ Appx., Ex. 2-4 (doc. 31).) Plaintiff avers that he was left for either two to four, or three hours, in the restraint chair, screaming for help, until just before

4

the next shift arrived.[5] (Compl. at 4 (2-4 hours), 12-13 (3 hours) (doc. 2); MJQ Ans. 1 (doc. 8); *compare* Resp. Appx., Ex. 1 (several hours, until he was discovered at 7:00 by the next shift) (doc. 33).) The defendants would peek in but act like they couldn't hear him. (Compl. at 12-13 (doc. 2); Resp. Appx., Ex. 1 (doc. 33).) He claims he was taken to the hospital because jail staff noticed that he could not pick up his arms or stand up on his own. (Compl. at 4; MJQ Ans. 1 (doc. 8); Resp. Appx., Ex. 1 (doc. 33).) The Detention Officers aver that after he was fully restrained, Plaintiff was observed from another room until he ceased his combative attitude. At that point, Plaintiff was then removed from the chair and returned to a suicide watch cell He was examined at Baylor Hospital at 7:00 A.M. and diagnosed with contusions on his face and arm and sinusitis. (Compl. at 4; MJQ Ans. 1, 7; MSJ Appx, Ex. 1- 4 (doc. 31); Resp. Appx. at 28 (doc. 33).) Plaintiff also went to Parkland Hospital on September 6, 2011, complaining of numbness and tingling in his right hand. (Resp. Appx. at 11-18 (doc. 33)).

Plaintiff pled guilty and was convicted of assaulting a public servant, Defendant Green, by biting him in the hand. (MJQ Ans. 8 (doc. 8); www.dallascounty.org, Cause No. F11-26170-P).

The defendants moved for summary judgment on March 5, 2012, alleging that part of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and that they are entitled to qualified immunity. (docs. 29-31). Plaintiff filed a response to the motion for summary judgment on March 27, 2012 (doc. 32), and the defendants filed a reply brief April 23, 2012. (doc. 34).

## II. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no

---

[5] According to the medical records tendered by Plaintiff, he had been "cuffed up tight for about 3hours." (Resp. Appx. (doc. 33) at 14.)

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[6] Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of

---

[6] Courts generally liberally construe a *pro se* plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Here, the defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that the defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

### III. QUALIFIED IMMUNITY

The defendants contend that Plaintiff's remaining excessive force claims against them should be dismissed because they are entitled to qualified immunity.

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong

inquiry. Under the first prong, court consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

As a pretrial detainee at the time of the alleged incidents, Plaintiff's excessive force claims arise under the Due Process Clause of the Fourteenth Amendment. *See Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). In an excessive force case, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *accord Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (emphasizing that the inquiry is "not whether a certain quantum of injury was sustained"). This inquiry has two components – an objective one that focuses on whether the alleged wrongdoing was harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8.

When considering the objective component, courts must look to the nature of the force used, and "whether it was nontrivial," not the extent of the injury sustained. *Wilkins*, 130 S. Ct. at 1179

8

& n.2; *accord Hudson*, 503 U.S. at 8-10. Excessive force "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

Because there is often no specific evidence of the official's subject intent, the subjective component may require consideration of objective factors, including (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; (5) any efforts to temper the severity of a forceful response; and in some cases, (6) a need "to act quickly and decisively." *Valencia*, 981 F.2d at 1446-47 & n.2; *Wilkins*, 130 S. Ct. at 1178 (noting that the extent of the injury is a factor as to whether the officers could have plausibly thought the force was necessary in the given situation and an indicator of the amount of force applied). These factors are "not exclusive; each case must be judged on its own facts." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). When there is no legitimate purpose for the officers' conduct, malicious and sadistic intent may be inferred from their conduct alone. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006).

### A. **Arresting Officer**

Plaintiff avers that the Arresting Officer, along with four other officers, used excessive force in taking him down to the ground, beating him, and tightly handcuffing and shackling him. The defendants present evidence that the Arresting Officer left after the initial intake procedure and was not involved in any of the events about which Plaintiff complains.

Generally, the evidence must be viewed in the light most favorable to the nonmoving party if there is a *genuine* dispute as to the facts. In *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), however,

the plaintiff's version of events was contradicted by a videotape of the relevant events. The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The court could instead rely on the videotape of the events in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party. *Id.* at 381.

As in *Scott*, the DVD videotape in this case "blatantly" contradicts Plaintiff's allegations against the Arresting Officer. It clearly reflects that he was present during the initial intake process but had no further interaction with Plaintiff after that point. Based on the DVD, Plaintiff has not demonstrated a genuine issue of material fact as to whether the Arresting Officer violated his constitutional rights by using excessive force. The Arresting Officer is therefore entitled to qualified immunity, and his motion for summary judgment should be granted.

**B.     Detention Officers**

   **1.     *Take-down and Restraint Claims*[7]**

Plaintiff avers that despite the fact that he was not in any way resisting, the Detention Officers took him down to ground, beat him, "excessively handcuffed" him, dragged him half-conscious to a room with a restraint chair, threw him into the chair, choked him and cuffed him too tightly at the ankles and wrists. The Detention Officers aver that they only used the force necessary to restrain

---

[7]The defendants contend that Plaintiff's claims relating to his take-down are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (MSJ Brf. at 31 (cm/ecf page number) (doc. 30).) *Heck* provides that a § 1983 plaintiff who seeks to recover damages for an allegedly unconstitutional conviction, imprisonment, or unlawful action that would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck*, 512 U.S. at 486-87. Because the issues in this case are appropriate for early and final determination, a determination of whether *Heck* bars Plaintiff's take-down claims is not required. *See Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998) (when an action raises an issue of immunity, the court should determine that issue as early in the proceedings as possible to the extent it is feasible to do so).

Plaintiff based on his resistance and assault on Green.

The DVD shows that after Plaintiff stopped and turned to one of the officers escorting him, he was taken to the ground. After he was handcuffed and shackled, he walked of his own volition to the chair, was placed in the chair, and was not choked. The DVD shows that the Detention Officers reacted quickly and decisively in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically to cause harm. Plaintiff's version of how the Detention Officer took him down, beat him into an unconscious state, dragged him to the restraint room, threw him in the chair and choked him is "blatantly" contradicted by the DVD. It may therefore be disregarded under *Scott v. Harris*. Plaintiff has not shown that the evidence is sufficient to support a resolution in his favor of the factual issue of whether the Detention Officers violated his constitutional rights by using excessive force in order to take him down or restrain him. The Detention Officers are therefore entitled to qualified immunity on the take-down and restraint claims.

   **2.**   *Chair Claims*

The only excessive force claims that are not contradicted by the DVD are Plaintiff's claims that he was kept in the restraint chair with hands and ankles cuffed too tightly for too long. According to Plaintiff, the cuffs caused tenderness and swelling, and when the straps on the chair were tightened, the handcuffs and ankle cuffs were tightened further. After he was removed from the chair, he was unable to stand and or lift his arms, and he later had numbness and tingling in one of his hands.

The Fifth Circuit has held that without more, a claim that handcuffs are too tight, resulting in pain and swelling, does not constitute excessive force. *Lockett v. City of New Orleans*, 607 F.3d 992, 999 (5th Cir. 2010); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Here, the DVD

reflects that Plaintiff was placed in the restraint chair at 1:33 A.M. (MSJ Appx, Ex. 5). It shows that the cuffs on the hands and ankles were applied in a good-faith effort to maintain or restore discipline rather than maliciously and sadistically to cause harm. Plaintiff's aggressive statements and attitude and his attack on Green created a reasonable threat to the Defendant Officers, to which they responded quickly and decisively by cuffing and restraining him. Plaintiff has not pointed to any evidence creating a fact issue as to whether any injuries he suffered from the tight cuffs were excessive to the need. Based on the *Valencia* factors, the events reflected in the DVD, and the facts that are not directly contradicted by the DVD taken in the light most favorable to him, Plaintiff has not demonstrated a genuine issue of material fact as to whether the detention officers violated his constitutional rights by the manner in which they cuffed his hands and ankles in the restraint chair. *Compare Dominguez v. Moore*, 149 Fed. App'x 281, 283-84 (5th Cir. Sept. 30, 2005) (holding that the plaintiff had alleged an excessive force claim that would survive dismissal where he alleged that the handcuffs caused deep cuts in his flesh that caused permanent scarring and nerve injury due to being restrained for seven days in a hospital bed, even while in a coma).

With regard to the amount of time Plaintiff was in the restraint chair, the Fifth Circuit has held that a 20-hour confinement in a restraint chair does not violate a pretrial detainee's due process right to be free from punishment where the detainee has disobeyed orders and destroyed property. *Blakeney v. Rusk County Sheriff*, 89 Fed. App'x 897, 899 (5th Cir. March 11, 2004). Plaintiff has presented no evidence that given his previous words and actions, including assaulting Green, the officers were acting with a malicious or sadistic purpose in restraining him in the chair for between two to four hours. *See Byers v. Navarro County, et. al*, 2012 WL 677203, *6 (N.D. Tex. March 1, 2012) (applying *Blakeney* where the plaintiff alleged the officers used excessive force in placing her

in a restraint chair for an extended period of time and holding that she had failed to allege either any injury from the restraint or that it was due to malicious intent, given her violent and uncontrollable behavior). The Detention Officers are therefore also entitled to qualified immunity on this claim.

## IV. CONCLUSION

The defendants' summary judgment motion should be **GRANTED**, and all of Plaintiff's claims against them should be dismissed with prejudice on the basis of qualified immunity.

**SO RECOMMENDED** on this 29th day of January, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE